# Illinois Official Reports

## Appellate Court

---

### *In re L.W.*, 2018 IL App (3d) 170405

---

| | |
|---|---|
| Appellate Court Caption | *In re* L.W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Jeremie G., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-17-0405 |
| Filed<br>Supplemental special<br>concurrence filed | March 21, 2018<br><br>April 25, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 09-JA-128; the Hon. Kirk D. Schoenbein, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Angela P. Madison, of Pekin, for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Lawrence M. Bauer, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Aimee E. Dluski, of Pekin, guardian *ad litem*. |

PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Schmidt specially concurred, with opinion.


**OPINION**

¶ 1    In the context of a juvenile neglect proceeding, respondent, Jeremie G., filed a supplemental petition to reinstate wardship (petition) over his minor child, L.W., so that respondent could establish that he was no longer dispositionally unfit as a parent. The State and the Department of Children and Family Services (DCFS) opposed respondent's petition, and the guardian *ad litem* (GAL) for the minor child supported the petition. After a hearing, the trial court denied the petition. Respondent appeals. We affirm the trial court's judgment.

¶ 2                                    FACTS

¶ 3    Respondent and Sonja W. are the biological parents of the minor child, L.W., who was born in September 2007. In September 2009, the State filed a juvenile petition alleging that L.W. was a neglected minor due to an injurious environment. After hearings were held on the petition, the trial court found that L.W. was a neglected minor, made L.W. a ward of the court, found that respondent was dispositionally unfit as a parent, found that Sonja W. was dispositionally fit as a parent, and awarded guardianship of L.W. to DCFS. L.W.'s placement was kept with Sonja W.

¶ 4    At the first and second permanency review hearings in September 2010 and May 2011, at which respondent did not appear, the trial court found that respondent had not made reasonable efforts or progress due to a lack of interest and cooperation and that respondent was still unfit as a parent. At the conclusion of the May 2011 hearing, the trial court returned guardianship of the child to Sonja W., terminated wardship, and closed the case.

¶ 5    More than five years later, in December 2016, respondent filed a *pro se* petition to restore his fitness as a parent. The trial court appointed an attorney for respondent. In February 2017, respondent's attorney filed a supplemental petition to reinstate wardship (the petition at issue in the present case) pursuant to section 2-33(1) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-33(1) (West 2016)), which provided, in pertinent part, that:

"(1) Any time prior to a minor's 18th birthday, pursuant to a supplemental petition filed under this Section, the court may reinstate wardship and open a previously closed case when:

(a) wardship and guardianship under the Juvenile Court Act of 1987 was vacated in conjunction with the appointment of a private guardian under the Probate Act of 1975;

(b) the minor is not presently a ward of the court under Article II of this Act nor is there a petition for adjudication of wardship pending on behalf of the minor; and

(c) it is in the minor's best interest that wardship be reinstated." 705 ILCS 405/2-33(1) (West 2016).

Respondent alleged in the petition that, after wardship was terminated in the present case, he had completed several services and had put himself in a position to be found dispositionally fit as a parent. Respondent alleged further that he had maintained his relationship with L.W., he had continued to have regular supervised visits with L.W., and it was in L.W.'s best interest to reinstate wardship. Respondent also sought leave to file a motion for a finding of fitness, which respondent had attached to the petition, if the trial court granted respondent's petition to reinstate wardship.

¶ 6    The State filed a response, alleging that the trial court did not have jurisdiction to rule upon the petition because the facts in this particular case did not comply with the requirements of section 2-33(1)(a) of the Act. DCFS filed a motion to dismiss respondent's petition on that same basis. Respondent filed a memorandum of law in support of his petition.

¶ 7    In June 2017, a hearing was held on respondent's petition and the various responses. At the hearing, respondent argued in support of the petition and asked that the petition be granted. The State and DCFS opposed the petition, and the GAL joined respondent in support of the petition. Sonja W.'s attorney had not been able to make contact with Sonja W. and did not, therefore, take a position on the matter.

¶ 8    After listening to the arguments of the attorneys and taking the matter under advisement for a short period, the trial court denied respondent's petition. As a matter of statutory interpretation, the trial court found that all three conditions listed in section 2-33(1) of the Act had to be satisfied before a supplemental petition to reinstate wardship could be granted. The trial court concluded that the factual situation in the present case did not satisfy the requirements of section 2-33(1) because wardship and guardianship in the present case had not been vacated in conjunction with the appointment of a private guardian under the Probate Act, which was listed as the first condition in the statute (see 705 ILCS 405/2-33(1)(a) (West 2016)). In making that determination, the trial court relied upon the Second District Appellate Court's decision in *In re Tr. O.*, 362 Ill. App. 3d 860, 866 (2005), which had reached the same conclusion in a similar factual situation. The trial court, therefore, denied respondent's petition and also denied respondent's request for leave to file his motion for fitness. As part of its ruling, the trial court stated that its decision was final and appealable and made an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding that there was no just reason to delay enforcement or appeal of its decision. Respondent brought this appeal to challenge the trial court's ruling.

¶ 9                                    ANALYSIS

¶ 10    On appeal, respondent argues that the trial court erred in interpreting section 2-33(1) of the Act and in denying his supplemental petition to reinstate wardship. Respondent asserts that the trial court's overly restrictive interpretation of the statute (1) is inconsistent with the Act as a whole, (2) is contrary to the Act's purpose to preserve and strengthen the minor's family ties whenever possible, (3) would render the statute useless, as an unfit parent would never be able to establish fitness or to obtain unsupervised visitation after wardship had been terminated, and (4) would lead to negative unintended consequences where courts would be reluctant to terminate wardship or to make findings of parental unfitness because such rulings would leave an unfit parent with no ability to establish fitness. Respondent contends instead that section 2-33(1) of the Act should be read so that the first condition listed in the statute serves as one basis upon which reinstatement of wardship may be granted and the second and third

conditions listed in the statute, taken together, serve as a second basis upon which reinstatement may be granted (that the word "and," between subsections (b) and (c), should be read as only applying to those two subsections and that the word "or" should be read into the statute between subsections (a) and (b)). In the alternative, respondent asserts that section 2-33(1) should be read so that each of the three conditions listed in the section is considered a separate basis upon which reinstatement of wardship may be granted (that the word "and," between subsections (b) and (c), should actually be read as "or"). Thus, respondent asserts that he was not required to satisfy the condition listed in subparagraph (a) of section 2-33(1) to obtain reinstatement of wardship as to L.W. In support of his assertion, respondent points to section 2-34 of the Act (705 ILCS 405/2-34 (West 2016)), wherein the legislature specifically stated that all of the conditions listed in that particular statute had to be satisfied. Respondent contends that had the legislature wanted section 2-33 to be read in that manner, it would have used the same type of language that it had used in section 2-34. In making his assertions on this issue, respondent contends that the *Tr. O.* case, upon which the trial court relied, was incorrectly decided and should not be followed here. Respondent maintains that, unlike the appellate court's interpretation of the statute in *Tr. O.*, both of his two proposed interpretations of section 2-33(1) in the present case would be consistent with the Act and would provide a remedy for an unfit parent to seek a finding of fitness in the event that his juvenile case was closed, that he corrected the condition that led to the removal of the minor, and that he was capable of being found fit. For all of the reasons stated, respondent asks that we reverse the trial court's ruling and, presumably, that we remand this case for further proceedings.

¶ 11    The State argues first that this court lacks jurisdiction to hear this appeal and that this appeal should be dismissed. The State asserts that appellate jurisdiction is lacking because respondent did not file his *pro se* petition for fitness or a notice of appeal within 30 days after the trial court entered its final order in May 2011, terminating wardship and closing the case (see *In re C.S.*, 294 Ill. App. 3d 780, 786-87 (1998)). Second, and in the alternative, the State argues that if this court has jurisdiction to hear this appeal, the trial court's ruling was proper and should be upheld. In support of that argument, the State asserts that section 2-33(1) of the Act clearly and unambiguously requires that all three conditions listed in the statute must be satisfied before a supplemental petition to reinstate wardship may be granted. The State asserts further that, as the trial court correctly found, respondent was unable to satisfy the first condition because this case did not involve the appointment of a guardian under the Probate Act. According to the State, the Second District Appellate Court's decision in the *Tr. O.* case is directly on point and should be followed here. Furthermore, the State contends that respondent's assertion regarding possible negative unintended consequences is purely speculative and does not justify ignoring the plain language of the statute and that respondent's remaining assertions on this issue are better directed to the legislature, rather than to the court. For all of the reasons set forth, the State asks first that we dismiss this appeal for lack of jurisdiction and, second, and in the alternative, that we affirm the trial court's judgment.

¶ 12                                    I. Appellate Jurisdiction

¶ 13    Before we address the merits of the parties' arguments on appeal, we must first address the State's contention that appellate jurisdiction is lacking in this case and that this appeal must be dismissed. Although it is well settled that an appeal must be dismissed if appellate jurisdiction is lacking (see *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984)), we do not

believe that appellate jurisdiction is lacking in the present case. Contrary to the State's contention, the time limits that apply to the filing of a postjudgment motion do not apply to a section 2-33(1) petition because, pursuant to the statute, such a petition may be filed any time prior to the minor's 18th birthday. See 705 ILCS 405/2-33(1) (West 2016). Under our reading of the plain language of the statute, once a section 2-33(1) petition is filed, the trial court has authority and jurisdiction to consider reinstating wardship. See *In re T.W.*, 352 Ill. App. 3d 1208, 1213 (2004). To the extent that the Second District Appellate Court took a different position on jurisdiction in the *Tr. O.* case (see *Tr. O.*, 362 Ill. App. 3d at 865-66), we disagree with that conclusion. Furthermore, although permanency-type orders are typically not final and appealable, the trial court order that was appealed from in the present case was permanent in nature and had the characteristics of a final and appealable order. See *In re Faith B.*, 216 Ill. 2d 1, 16-18 (2005) (finding that under the facts of that particular case, the permanency order entered by the trial court was a final and appealable order). We conclude, therefore, that appellate jurisdiction is not lacking in this case since respondent's notice of appeal was timely filed within 30 days after the trial court entered its order denying respondent's section 2-33(1) petition. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303(a)(1) (eff. July 1, 2017); *Archer Daniels Midland Co.*, 103 Ill. 2d at 538 (the filing of a timely notice of appeal vests the appellate court with jurisdiction); *T.W.*, 352 Ill. App. 3d at 1213; *Faith B.*, 216 Ill. 2d at 16-18. Having found that appellate jurisdiction exists in this case, we now turn to the merits of the parties' statutory interpretation arguments.

¶ 14                            II. Interpretation of Section 2-33(1) of the Act

¶ 15        The interpretation of a statute is a question of law and is subject to *de novo* review on appeal. *In re M.M.*, 2016 IL 119932, ¶ 15. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Id.* ¶ 16. The most reliable indicator of that intent is the plain and ordinary meaning of the language of the statute itself. *Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute. *Id.*; 5 ILCS 70/1.01 (West 2016) (in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.* However, if the language of a statute is ambiguous in that it is susceptible to more than one reasonable interpretation, a court may consider extrinsic aids to determine the meaning of the statutory language. See *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51 (1990).

¶ 16        The statute at issue in the present case is section 2-33 of the Act, which, in pertinent part, provides as follows:

"§ 2-33. Supplemental petition to reinstate wardship.

(1) Any time prior to a minor's 18th birthday, pursuant to a supplemental petition filed under this Section, the court may reinstate wardship and open a previously closed case when:

(a) wardship and guardianship under the Juvenile Court Act of 1987 was vacated in conjunction with the appointment of a private guardian under the Probate Act of 1975;

(b) the minor is not presently a ward of the court under Article II of this Act nor is there a petition for adjudication of wardship pending on behalf of the minor; and

(c) it is in the minor's best interest that wardship be reinstated.

(2) Any time prior to a minor's 21st birthday, pursuant to a supplemental petition filed under this Section, the court may reinstate wardship and open a previously closed case when:

(a) wardship and guardianship under this Act was vacated pursuant to:

(i) an order entered under subsection (2) of Section 2-31 in the case of a minor over the age of 18;

(ii) closure of a case under subsection (2) of Section 2-31 in the case of a minor under the age of 18 who has been partially or completely emancipated in accordance with the Emancipation of Minors Act; or

(iii) an order entered under subsection (3) of Section 2-31 based on the minor's attaining the age of 19 years;

(b) the minor is not presently a ward of the court under Article II of this Act nor is there a petition for adjudication of wardship pending on behalf of the minor; and

(c) it is in the minor's best interest that wardship be reinstated.

(3) The supplemental petition must be filed in the same proceeding in which the original adjudication order was entered." 705 ILCS 405/2-33 (West 2016).

¶ 17    In the *Tr. O.* case, the Second District Appellate Court found that the statutory language of section 2-33(1) of the Act was clear and that, as a matter of statutory interpretation, all three of the conditions listed in section 2-33(1) had to be satisfied before a supplemental petition to reinstate wardship could be granted. *Tr. O.*, 362 Ill. App. 3d at 866. In reaching that conclusion, the Second District Appellate Court noted that the legislature had plainly limited the application of section 2-33(1) to situations where wardship and guardianship under the Act were vacated in conjunction with the appointment of a private guardian under the Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 2016)). See *Tr. O.*, 362 Ill. App. 3d at 866.

¶ 18    Although, as noted above, we do not agree with the Second District Appellate Court's statement in *Tr. O.* regarding jurisdiction as it relates to section 2-33(1), we do agree with the Second District's interpretation of the conditions portion of the statute. We find, therefore, as did the Second District Appellate Court in *Tr. O.*, that all three conditions listed in section 2-33(1) of the Act must be satisfied before a supplemental petition for reinstatement of wardship may be granted. See 705 ILCS 405/2-33(1) (West 2016); *Tr. O.*, 362 Ill. App. 3d at 866. In addition to the plain language of section 2-33(1) and the appellate court's decision in *Tr. O.*, our interpretation of the statute is further supported by the fact that the legislature used both the words "and" and "or" in section 2-33(2) of the Act (see 705 ILCS 405/2-33(2) (West 2016)), thus, clearly showing that the legislature intended to use the word "and" when it did so in section 2-33(1). Applying that interpretation to the facts at hand, we find that respondent's supplemental petition to reinstate wardship was properly denied because the factual situation failed to satisfy the first condition listed in the statute—that wardship and guardianship under

the Act were vacated in conjunction with the appointment of a private guardian under the Probate Act of 1975. See 705 ILCS 405/2-33(1) (West 2016); *Tr. O.*, 362 Ill. App. 3d at 866.

¶ 19 We are not persuaded to reach a different conclusion in this case based upon the proposed interpretations of section 2-33(1) that respondent suggests. Indeed, as our supreme court has pointed out, the use of the conjunctive "and" generally indicates that the legislature intended that all of the listed conditions or requirements in a statute be satisfied. *M.M.*, 2016 IL 119932, ¶ 21. Nor do we believe that any additional insight is gained by considering the language the legislature used in section 2-34 of the Act, when the legislature clearly demonstrated in section 2-33 that it had stated "and" when it meant "and" and that had it stated "or" when it meant "or." Furthermore, we believe that respondent's remaining concerns regarding possible unintended negative consequences and whether a person in respondent's position lacks a remedy to establish fitness are more appropriately directed to the legislature, rather than to this court.

¶ 20 CONCLUSION

¶ 21 For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell County.

¶ 22 Affirmed.

¶ 23 JUSTICE SCHMIDT, specially concurring:

¶ 24 While I concur, I write separately to address respondent's contention that the procedure utilized in this case terminated his parental rights for all fundamental purposes. It did not. Pursuant to section 1-3(13) of the Act (705 ILCS 405/1-3(13) (West 2016)), respondent continues to have residual parental rights and responsibilities over L.W. As his parental rights were not terminated, nothing prevents him from seeking unsupervised visitation or custody by filing a petition for allocation of parental responsibilities under the Illinois Marriage and Dissolution of Marriage Act. See 750 ILCS 5/601.2 (b) (West 2016).